CUNDIFF v. STATE.   (No. 5455.)

(Court of Criminal Appeals of Texas.   Jan. 14,
1920.   On Motion for Rehearing,
Feb. 25, 1920.)

1. CRIMINAL LAW ⬤⟳595(10)—REFUSAL OF
CONTINUANCE NOT JUSTIFIED WHERE AB-
SENT WITNESS WAS INDICTED WITH ULTERIOR
PURPOSE.

In a homicide case, a continuance request-
ed in order to secure an absent witness cannot be
refused solely upon the ground that the wit-
ness had been indicted and hence was disqual-
ified, where it appears that the indictment was
secured by the district attorney with the sole
purpose of bringing her back as a witness.

2. CRIMINAL LAW ⬤⟳594(1)—REQUESTED CON-
TINUANCE PROPERLY REFUSED.

A requested continuance in order to secure
the attendance of an absent witness held prop-
erly refused, in view of the witness' testimony
before the grand jury, failure to show diligence
in securing her attendance, and the probability
that she had entirely disappeared.

3. HOMICIDE ⬤⟳338(2)—ADMISSION OF EVI-
DENCE NOT REVERSIBLE ERROR.

Evidence that the brother of two women
who were with accused at the time of the shoot-
ing intended to go after his sisters was of no
consequence, and its admission was not prejudi-
cial error.

4. CRIMINAL LAW ⬤⟳485(2)—HYPOTHETICAL
QUESTION REGARDING INSANITY PRODUCED
BY NARCOTICS SUPPORTED BY EVIDENCE.

Where accused claimed he killed deceased
while temporarily insane from use of narcotics
and intoxicants, evidence regarding the amount
of morphine and whisky accused had taken
prior to the killing held to sustain the hypo-
thetical case put to a physician who testified
that the amount specified would not cause tem-
porary insanity.

5. CRIMINAL LAW ⬤⟳656(9)—COURT'S FAIL-
URE TO RECOLLECT EVIDENCE NOT COMMENT
ON WEIGHT OF EVIDENCE.

Where accused claimed he killed deceased
while temporarily insane from using narcotics
and intoxicants, the court's remark that he did
not recollect testimony that accused had taken
a fourth morphine tablet held not to infringe
the statute forbidding the court to comment on
the weight of the evidence.

6. HOMICIDE ⬤⟳309(5)—MANSLAUGHTER OR
NEGLIGENT HOMICIDE NOT PRESENTED BY EV-
IDENCE.

Evidence regarding the circumstances under
which accused, who had been drinking intox-
icants and using narcotics to some extent, shot
a negro who refused to secure gasoline for an
automobile, etc., held not to present the issue
of manslaughter or negligent homicide, but only
murder and temporary insanity.

7. HOMICIDE ⬤⟳294(1)—REFERENCE TO NAR-
COTICS USED BY ACCUSED AS MORPHINE NOT
ERRONEOUS.

Where accused claimed he killed deceased
while temporarily insane from using narcotics
and drinking whisky, the court's reference to
tablets used by accused as morphine was not er-
roneous, in view of testimony by accused's wife
that they were one-fourth grain morphine tab-
lets.

8. HOMICIDE ⬤⟳354—TEN-YEAR SENTENCE FOR
MURDER PROPER.

A ten-year sentence upon conviction for
murder in a case involving the issue of tempo-
rary insanity from use of morphine and whisky
held warranted by the evidence.

Appeal from District Court, Hopkins Coun-
ty; Wm. Pierson, Judge.

Albert Cundiff was convicted of murder,
and appeals.   Affirmed.

C. E. Sheppard and Thornton & Thornton,
all of Sulphur Springs, for appellant.

Clark & Sweeton, of Greenville, and Alvin
M. Owsley, Asst. Atty. Gen., for the State.

LATTIMORE, J.   Appellant was convicted
in the district court of Hopkins county of
the murder of one Bob Trevillion, and his
punishment fixed at ten years' confinement in
the penitentiary.

The case was first set down for trial on
February 20, 1919, and when called appellant
asked and obtained a postponement on ac-
count of the absence of Annie Ashley; the
case being then postponed to February 27th.
On the latter date appellant asked for a con-
tinuance of the case on account of the ab-
sence of said witness, and the overruling of
his application is assigned here as error.

It appears that appellant was indicted for
assault to murder before the death of deceas-
ed, and it is set forth in said application for
continuance that he had caused a subpœna to
issue and be served on said witness to appear
in his behalf in August, 1918, at the trial of
said assault to murder case, in obedience to
which process she did in fact appear.

[1, 2] On September 23, 1918, the death of
deceased took place, and on September 28th
appellant was indicted for murder, and later
the case, on call, was set for trial February
20, 1919.   It further appears that on January
29, 1919, the state caused a subpœna to issue
to Hunt county for said witness Annie Ash-
ley, which was returned on February 7th not
served, because of the removal of the witness
to Hopkins county; that on February 8th ap-
pellant caused a subpœna to issue to Hopkins
county for said witness, which was later re-
turned by the sheriff without in any manner
filling out the blank return thereon; that on
February 8th the state had an attachment is-
sued to Hopkins county for said witness,
which had neither been served nor returned
at the date of said application.   Appellant says
that he has made diligent search and inquiry
for said witness, but is unable to ascertain
where she may be found, and had no idea of
her whereabouts at the time of making said
application; that she boarded a train at

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Greenville about six weeks before the date of the trial, and he can find no one who knows of her whereabouts since. The substance of the facts expected to be proven by said witness appear later in the opinion.

The application was filed and presented on March 5th, and the court overruled the same. Appellant set up this action of the court as ground for his motion for a new trial, and when the same came on to be heard the state, through the district attorney, contested that portion of said motion upon the ground that said witness could not have testified, she being under indictment for the same offense charged against appellant; and, further, that both she and her husband were fugitives from justice at the time of the trial; and, further, that said witness would not have likely testified as set out in said application, had she been present and qualified.

An examination of the facts adduced before the court at the hearing upon said contest shows that the indictment against Annie Ashley was not returned until February 27, 1919; same being the date to which the instant trial was postponed, and also the day upon which it was called for trial. The district attorney was placed on the stand by appellant in support of said motion, and admitted that the witnesses to the killing were not before the grand jury which returned said indictment, and that he, said attorney, stated to the grand jury the facts, and told them it would be a pretty good idea to indict said woman; that appellant had run her away and was trying to get a continuance on account of her absence; and that he would like for her to be indicted so they could catch her and bring her back as a witness, or otherwise. Supplementing this, we have before us in the record the testimony of each of the other eyewitnesses to the homicide, and there is nothing in said testimony that appears in any way to connect said Annie Ashley with said killing. We do not think a refusal of the continuance or the overruling of the motion solely because said Annie Ashley was under indictment would have been proper. Doughty v. State, 18 Tex. App. 179, 51 Am. Rep. 303; Dodson v. State, 52 Tex. Cr. R. 247, 106 S. W. 379; Bennett v. State, 47 Tex. Cr. R. 52, 81 S. W. 30.

While the presumption is in favor of the regularity and correctness of the rulings and acts of the courts, officers, and machinery of the state, yet when it is disclosed by the record that such action is without warrant of law or fact, and it is admitted that the purpose of such acts or rulings was other than that which the bona fides of the law contemplates, this court will not sanction same. If Annie Ashley was indicted without evidence to connect her with the crime charged, and same was admittedly for the purpose of bringing her back as a witness, the fact of such indictment would not avail the state in attempting to urge her disqualification as such witness.

This brings us to the further question as to whether said witness, if present, would likely have given the evidence set forth in said application for continuance. It was alleged that if present she would testify the following, which we quote from said application:

"That at the time that he shot deceased he was wholly insane from the use of intoxicating liquors and narcotic drugs, and that he was lying flat of his back and had a very small pistol in his hand and that he shot the same without any knowledge or intent that he might shoot and injure the deceased, but shot it in an insane manner without aim and without the intent to hit deceased; and he further expects to prove by her that nothing passed between deceased and defendant at the time of the shooting that showed or tended to show any ill will, malice, or intent to injure the said deceased on the part of him, the defendant; that at the time he shot the deceased he was in such frame of mind, caused by the recent use of intoxicating liquors and narcotic drugs combined, that he was unable to form any design to injure the deceased, and did not have sufficient mental power to know what he was doing, or that he was likely to hit the deceased when he shot, and did not have sufficient mental power to form any intent to injure the deceased, and was acting wholly from an insane purpose while incapable of having or forming any intent to injure the deceased or any one else."

In the record appears a statement sworn to by said Annie Ashley as a witness before the grand jury testifying concerning this homicide. After testifying as to perfectly rational conduct on the part of appellant during several hours after she first met him on the day of the homicide, and until they came to the place where the homicide occurred and where the gas gave out in the car in which the party were riding, the witness Annie Ashley stated:

"When we got out of gas Cundiff set down in the road and said, 'I will stay here all night before I will get any gas.' Mr. Pace was fooling with the engine and I was just sitting there kinder this way, just dozed off, and all at once heard the shooting and just raised up and said, 'What in the world is that?' and Pace said, 'It is just Albert shooting at a negro; you know how Albert is;' then sister came to the car and I asked her what Albert meant and she said she didn't know; he was shooting at a negro; and I got out and went to the negro and asked him if it was a fact he was shot, and he said, 'Ma'am, Mr. Cundiff has shot me;' and I asked him where he shot him at and he put his hand on his back and said, 'He shot me in my back;' and I asked him if there was anything I could do for him, and he said nothing unless I could catch his mule, and I raised up, and Mr. Pace walked up and said I couldn't catch it; that the mule ran off. When I walked up to the negro he was lying on his face. The negro told me 'Mr. Cundiff tried to make me go get some gas and I thought he was funnying at first, and he told me he could make me get down and hug his neck, and he told me to get down, and I never thought about his shooting me, but all at once he commenced shooting me.' Mr. Pace come by that way, and stopped and told me

which way the mule went, and we stood there a minute and Pace, Cundiff and my sister came by there. After I got out of the car Pace and Cundiff never said anything, only I said to Cundiff, 'You ought to be ashamed to shoot this poor negro when he wasn't doing a thing;' and Cundiff said, 'I could make him come and hug my neck; he ain't hurt.' After leaving there Cundiff said, 'You all know I didn't shoot first; you know he was shooting at me and I had to shoot.' Marie said, 'Why Albert, you know that negro didn't shoot at you;' and then Cundiff said, 'Do you know how many shots were fired?' and she said, 'You shot three times, and those were the only shots.' "

It thus appears that said witness herself has given testimony under oath contrary to and contradicting the facts set up in said application which were expected of her.

Looking to the statement of facts and the testimony of the other eyewitnesses to the homicide, it appears that Annie Ashley was either sitting in the car or out near the engine assisting Pace at and preceding the homicide, and was not back of the car where the shooting occurred. We think, under these facts, the trial court correctly overruled the application for continuance and that portion of the motion for a new trial. We are further of the opinion that legal diligence was not shown. No effort seems to have been made by appellant after the 8th of February to procure additional processes, nor after the postponement of the case on February 20th. He seems to have contented himself with making personal inquiry as to the whereabouts of said witness, which would not be sufficient in law. We further observe that the evidence introduced in support of the contest of said motion for a new trial by the state seems to show with much certainty that said witness entirely disappeared, and that there was no apparent likelihood that she could be found or her evidence obtained by the ensuing term of court.

[3] Referring to other matters complained of by appellant, the question as to whether the witness Pace knew or did not know that Lud Davis, the brother of the two women who were with appellant and Pace at the time of the shooting, was going after his sisters earlier on that day, is of no conceivable consequence, and the action of the court in allowing the state to ask said witness Pace regarding that matter could not have had any injurious effect. This is equally true of the matters set up in the third and fourth assignments of error.

[4] Referring to the objection to the hypothetical case put to Dr. Gregory by the state, the same seems borne out by the testimony. Appellant said he took three quarter-grain morphine tablets, one about 6 a. m., one about 11 a. m., and one about 3:30 or 4 p. m. The witness Pace said he saw him take two after he got with him. Appellant's wife said she saw him take the one early in the morning. Dr. Gregory testified that the taking of three quarter-grain morphine tablets, each accompanied by a drink of whisky, would not cause temporary insanity, and that if said tablets were taken at intervals of three or four hours their effect could only be to make the appellant sleepy.

[5] Complaint is also made of the fact that the trial court stated in reference to one of the exceptions reserved by the appellant to the testimony of Dr. Gregory that he, the court, did not remember the testimony of taking a fourth tablet. The bill of exceptions fails to show that this remark was made in the hearing of the jury, but if it was we think said remark was not an infringement of our statute forbidding comment on the weight of the evidence or the case by the trial court. This remark was in no way any intimation as to the case on the weight of the evidence, but was merely a statement that the court did not remember said evidence. Nothing was excluded or stricken out, and the jury heard the evidence and were the exclusive judges of the facts proven.

[6] We have carefully examined the charge of the court, in view of the numerous exceptions taken thereto, and have concluded that none of them are sound. We do not believe any issue of manslaughter or negligent homicide arises from the evidence. Appellant was undoubtedly under the influence of liquor, and after numerous other car troubles, when the gasoline gave out, he went back of the car and sat down, and according to a state's witness, said he would stay there all night before he would go and get any gasoline. Deceased, a negro man, came riding by presently, and appellant stopped him and tried to get him to go and get gasoline. Deceased said he didn't have time. Appellant insisted that deceased was mounted and could get it for them. Deceased sat on his mule and grinned, but said nothing. Thereupon appellant told him he would shoot him, and called him a "black son-of-a-b-h." When deceased turned to go away appellant shot him in the back, from which shot death resulted.

After the shooting appellant tried to get the others in the party to say nothing of the occurrence, and asked them if they did say anything about it to say that the negro shot at him first.

We think the court properly submitted only murder and temporary insanity resulting from the combined use of whisky and morphine.

[7] Mrs. Cundiff, wife of the appellant, testified that the tablets used by him were one quarter grain morphine tablets, which were put up for her and by her given to appellant before he left home that morning. The trial court did not err in referring to the same as morphine.

[8] Appellant was given ten years, and we think the evidence fully warranted the same.

Finding no error in the record, the judgment of the trial court is affirmed.

## On Motion for Rehearing.

In his motion for rehearing appellant urges that he should have been granted a continuance in order to get the testimony of Annie Ashley. We have given our former opinion careful scrutiny, in the light of the earnest insistence of appellant on this point. We think our announced conclusion was correct, that no sufficient diligence in his effort to obtain the presence of said witness at the trial appears in the record. The indictment was filed September 28, 1918. The trial term of the court below began January 28, 1919, and no process of any character was sought by appellant for said witness, in the instant case, until February 10th thereafter. When the case was called for trial on February 20th it was postponed for a week, at appellant's request, because of the absence of said witness; and, in fact, the case was not called for trial until March 5, 1919, and notwithstanding his process of February 10th had been returned prior to the calling of the case on February 20th, appellant made no application for additional process for said witness, as appears from his application for continuance filed on March 5th, in which he sets forth merely the inquiries and personal efforts made by him to locate said witness. This would appear to be insufficient, under all the authorities.

It is now alleged that the absent testimony was mainly material for its bearing on the defense of temporary insanity, and that the statement made by said witness before the grand jury, which is quoted in our opinion, was as to other matters, and did not negative the claim made by appellant in his application that the testimony of said witness bearing on the question of insanity would be as set out in said application, and would be material and likely true. Again reviewing said application, it therefrom appears that the absent witness would testify that she saw appellant use intoxicating liquor several times, and saw him take two or three morphine tablets on the evening and night of the shooting, and that when he shot deceased he was wholly insane from this use of such liquor and drug. As stated in our opinion, it appears from the statement of this absent witness herself, made before the grand jury, that when the shooting took place, she was "sitting there kinder dozing off, and all at once I heard the shooting and raised up and said 'What in the world is that?'" According to the testimony of Mrs. Williams, sister of said absent witness, when the gas gave out she, Mrs. Williams, got out of the car, and was out of the same when the shooting took place, but Mrs. Ashley did not get out of the car until after the shooting. Taking the two together, it is evident that Mrs. Ashley was in the car, but asleep or dozing, when the shooting took place, and knew nothing that occurred after the deceased came up to where the parties were, nor what passed between deceased and appellant until after the fatal shots were fired. As to her testimony regarding the liquor and morphine tablets, it in no way appears different from that given by the other witnesses, and in fact the state did not seem to take issue regarding the quantity or the character of the liquor and tablets used. These facts fully appearing, the only remaining matter expected from said absent witness would be her opinion as a nonexpert witness as to whether the condition of appellant was that of temporary insanity when the shooting took place. We confess that it does not appear to us sufficiently probable from the record that said witness would have so testified, or that such testimony, if same should be her opinion and given in evidence, would likely produce a different result; this being the test properly applicable.

Being unable to agree with the contentions urged, the motion for rehearing is overruled.